Good afternoon, Illinois appellate court first district court is now in session, the fourth division, the Honorable Justice Mary Kay Rochford presiding case number two zero dash one one one one people versus Leonard Logan. Morning. And I wish to extend the apology of presiding Justice Reyes for not being present this morning he had and totally unexpected conflict that required him to to miss today's oral argument, but I assure you that he will be listening to the audio. So, before we proceed with counsel like to introduce themselves, starting with the appellate. Sure. Good morning. I'm Deborah lovie from the exoneration project on behalf of Leonard Logan. And for the FAA. My name is Brian Assistant State's Attorney Brian how it is on behalf of the people of the state of Illinois. Okay. Good morning Council and Miss lovie if you'd like to proceed, you may. Great, thank you. I'd like to reserve four minutes for rebuttal, I mean, thank you. Good morning as I said Deborah lovie on behalf of Leonard Logan. Mr. Logan has served out his sentence for a crime he did not commit. He is present this morning with us on zoom and respectfully asks this court to reverse denial of his post conviction petition and order a new trial, based on his actual innocence and briefly recall a trial the only two eyewitnesses, the surviving victim Charles Jenkins and bystander Elsie Robinson, both described the shooter is very short around five six or five seven, and Jenkins affirmatively testified that Mr. And against that backdrop, we also have a new witness urban walls, who says that his friend and fellow gang member, Kenneth Mosby committed this crime. Now Mr Mosby fits the description from Jenkins and Robinson, the only two eyewitnesses who testified, and is corroborated by the 911 caller, whereas Mr. Logan was 28 years old, weighed over 200 pounds, and the state's investigator estimated him at six feet tall. Mr Mosby actually had a motive. In this case, Mosby was a gang enforcer, whereas Mr Logan had no was not part of any gang and had no motive. Mr Mosby was also state witnesses Latanya Peyton's boyfriend. Now, in this case, the entire conviction rested on the seventh of eight versions that Latanya Peyton told the police officers about this event, it happened after she was held for three days or over two nights almost three days. She gave version after version, and we now learn that she was actually the girlfriend of Kenneth Mosby who fits the description by all accounts of the shooter. How do we have the evidence of her being the girlfriend. That comes that that comes from Mr walls his new testimony. So Mr walls has testified that they were boyfriend and girlfriend, and Mr walls has testified that Mosby was the shooter. Now we have, I understand there are some questions about the courts acceptance of walls testimony. But what I want to stress for the court is the independent corroboration of what Mr walls testified about. So, walls had external corroboration for most of the stuff that he testified about his testimony checks a whole lot of boxes. We have the fact that Mosby fit the shooters description of you have the contemporaneous description from the 911 caller. You also have Jenkins and Robinson as I've discussed, and there's a there's a even a fourth one. Albert Garrett in the police report to list the shooter is five five to five 718 or 19 years old and 125 pounds. So you have the only two witnesses who testified in this case you have the 911 caller, you have this other person in the police report, and from all of these other witnesses. You also have external corroboration of what most be about what Mr walls tells us about Mosby being a gang enforcer. If you, you know, Mr Logan had no meaningful criminal record he had no crimes of violence he had one possession offense but he was not a gang member his PSI found no evidence of gang membership, whereas Mr Mosby had quite the gang history, he was the enforcer of his game, which is the first time we ever make sense of this crime. This was a point blank shooting of somebody which sounds like a gang enforcement crime, and does not sound like there's nobody's ever given us any reason why Mr Logan would have done it so you have the independent corroborations of Mr walls. That the circuit court just refused to accept. Instead, the court decided that walls was was on was incredible by categorically rejecting his testimony, the court, if you go back and I urge you to read it because council for the state cherry picks several phrases but when you read this thing as a whole, it is and the inmates, after the fact, lie to cover one another and that would be. First of all, on all fours with the pace case you're not allowed to categorically reject witnesses and pace, the judge said you know I'm tired of, of doctors always giving me evidence and mitigation. And that's impermissible, if a court were to say, I don't accept alibis for mothers anymore I'm tired of moms coming in and saying their sons were at home. That would be unacceptable and that's basically what the court did here the court said, I'm tired of inmates kind of coordinating their testimony. And frankly, it may, I don't know if that was exactly the terms but even putting that aside and the court goes through some inconsistencies or or credibility issues, particular to this, this witness. Yes, and it's understandable when this isn't this witnesses case this is something that he saw decades ago that he might have some confusion about exactly when certain things happen, things like that the types of nitpicking that the court does is extremely insignificant, particularly since you have independent corroboration of what was tells us. And in contrast to that, the court, I urge you to recall the fact that the only inculpatory evidence in this case that ever existed is Latonya Payton's version seven, and there is no corroboration of that version there's absolutely no physical evidence, and no witness that ever corroborates her. So, in the weight of thing to nitpick little things about walls testimony and find that no trier effect could have credited was absolutely manifest error. You know, the other side of the scale you have Latonya Payton, who inculpates Mr. Logan, and she is contradicted by the, by the bystander witness LC Robinson says that the shooter was the passenger of this car, and that there was somebody else driving the car, Latonya Payton, and Mr. Walls tells us that Latonya Payton was one who was driving, which makes sense because she was the girlfriend in Payton's version, she makes the shooter the driver of the car so her version is not corroborated. And there's no physical evidence that supports it, it contradicts versions one through six and eight. She recanted it almost immediately so you have what is a very, very weak inculpation weight against both the 911 testimony, and Mr. Walls might have screwed up, you know, the date 20 years ago, really does not do much to poke holes in whether or not a jury could credit could credit this person. And that's the real problem with what the what the court did in this case. The court did not remember that Robinson requires an objective question of whether or not a fact finder could reach a different result after considering the evidence. The court, you know, found it implausible that somebody would want to drive that far, not impossible, you know there are cases where courts might say it's impossible to get from A to B in 20 minutes. That's not what the court did the court said, you know, why would they have had this gang meeting all the way over there that doesn't make sense to me. The court used all sorts of information that about what it thought it knew about gangs gang relationships and things like that, in order to discount Mr. Walls, the court was obviously very hostile and if you read the, the, the ruling very hostile towards Mr. But that says nothing about whether an objective fact finder the objective test about whether a fact finder in this incredibly closely balanced case with incredibly weak evidence might have might credit Mr. Walls, and I think there's a high probability they would, given the fact that there's no inculcating evidence that's meaningful on the other side. If there's no further questions. I guess I'd like to reserve the remainder of my time for a bottle, but I'm happy to invite other questions before I do so. Justice Martin. No, I don't have any questions. Thank you. Okay, then I guess I'll just include in closing on this to say you know this is I've been doing this a long time this is the only case in my career where I can remember a dissent on the issue of reasonable doubt, there were three substantive jury questions this was an incredibly weak case, and this is meaningful corroborative of each other. New evidence that absolutely merits a new trial here and Mr Logan is out he's present here and he's asking for his chance to vindicate himself. How is the 911 call. Well, twofold answer to that, Your Honor. The first is that, you know, Mr Logan admittedly he raised this in his post trial motion and he has spent literally decades trying to get that tape. It was lost and it was tendered to the defense in the middle of the post conviction hearing. So I would urge this court to treat it as new, but regardless, when you have the new testimony from Mr walls, which the state has conceded is absolutely new. That has to be considered alongside the evidence, both new and old in deciding whether or not a new trial is warranted under Robinson, and there's abundant case law on that including Ortiz Coleman and some of the other cases cited in the brief that tells you that you have to consider them. The new and the old evidence together so regardless of whether or not the court wants to treat it as new it should but I would urge the court to treat it as new Mr Logan has done everything in his power to try and get this 911 tape. Since his trial happened, and he was only able to get it from the state in the middle of the evidence you're hearing and there's a record of that during the hearing when it's finally tendered. Is the federal habeas actions. I think it was a habeas still pending or stayed. It is stayed awaiting this court's ruling. All right, thank you. Any other questions, just as much. No, no, no, no justice. Thank you. Thank you. So how does it please the court Brian how to use on behalf of the people. In this case, the, the post conviction court correctly disposed of defendants action set successive action for post conviction really both with respect to its ruling. I guess the key issue is the actual innocence claim and defendants counsel starts out by emphasizing that the evidence against this defendant was very weak at trial, the evidence against this defendant was sufficient, I think. No, it wasn't the strongest case but it was clearly sufficient. The appellate court, this court, a prior incarnation of it obviously found that, you know, in a published opinion that was affirmed that I mean that that was then litigated for some reason, also as a post conviction claim, which again was affirmed. And even when they defend and tried to argue the sufficiency of the evidence in the federal habeas claim that was not the part of the habeas claim that went to the evidentiary hearing. In fact, the sufficiency of the evidence was affirmed. Basically what happened was defendant was convicted primarily on the testimony of one witness and one who recanted or testimony at trial, but one credible witness is sufficient to support a conviction and her testimony was corroborated along the edges there were parts of it that worked, and she only recanted her testimony and by the way her testimony that I'm talking about what console cast as version number seven was actually, you know, the version that she put into writing, and the version that she then told a grand jury. And so it wasn't just another version it was a commemorated sworn version. And she backed off that only after she met defendant, while he was in prison. At that point she alerted the people that she was changing her mind and she testified and tried to recant and recanted and recanting testimony is there's case law that says that that's inherently there's an it's inherently dubious, I guess would be the phrase. So that that's what the court went into this with, and the court pointed that out at the very beginning of the evidentiary hearing the post conviction court gets a pretty harsh rap from opposing counsel here. And for the way in which it conducted its rule for the comments it made during its ruling. But on the whole, it's really first of all it's ruling was corrected, they can't show that was manifestly erroneous. And that's the most important thing really for disposing of this the court went through, you know, the prior proceedings and said now I'm confronted with this witness. And that's exactly how it's supposed to work. That's how it works in the cases. So, it then turned its eye to that witness and determined whether that witness was credible, and the court went through why that witness was not credible and their, and its reasons were totally valid. It noted first for starters that he would be that he would be impeached by his prior convictions it pointed out it exactly it cited in the transcripts where walls was was the name of the witness everyone was urban, I think, urban was was incredibly invasive about how exactly he learned the name of this alternative suspect, who just happened to be who he claimed to be his friend, and who also happens to be deceased, and exactly how he got that name and at one point he testified that he got the name from defendants he testified he got the name from the people from the prosecutors who came to see him because it was all over the place. And the judge was there, found this, not just this inconsistency if you're talking about picking at you know picking nets here, but the judge was especially unhappy with here was he was critical that it showed that was was clearly willing to lie under oath one way or another. He'll say one thing and then he'll say something else and then he was adamant about something else. And then the judge honed in on the walls his testimony about the date in question, and the judge found it very very questionable that he was able to remember that date was such a vivid detail. When he couldn't remember even the actual date upon which he could the data he committed the crime that put him in prison for 22 years, and he was testifying about that date March 18 1997 some 20 years some odd years after the fact. So, that was also iffy and and the judge pointed out that in a retrial that would obviously be a big problem. In terms of his credibility. The judge also pointed out that walls the story and this is where the rubber meets the road in terms of the complaints about the way that the judge disposed of the case that he'd concocted a story that was somehow set up to defy He used nicknames, or, and said, or generic names even and said, Well, I call every woman baby girl I was with baby girl. I don't know who baby girl is who baby girl was in his affidavit it makes it sound like baby girls and actual specific person that he had a long term relationship but he said now I simply referred every woman is baby girl. The story about how he got from point A to point B to point C that day. The judge found that rather odd. And the judge found on the whole that the story was put together, essentially to defy verification and cooperation, and that, given the circumstances upon through which was somehow became involved in this case these many years later, that the defendant had basically orchestrated the whole thing based on evidence that the defendant would have had an information the defendant would have had in prison, when he happened to encounter was in prison. At that point, the judge, having made this, you know credibility finding and explain why he wasn't credible and that it was orchestrated went into a made some comments that he'd seen this before. So he'd seen and that unfortunately it appeared to be a common thing that inmates were doing this. He also the judge also made a comment that counsel took issue with in her brief about motive. And the reason the judge made the comment about motive was it was invited, you know, why did the judge, why would this man come in and why what what did he have to gain from this. That was actually the argument that post conviction counsel made during her argument and therefore the judge felt compelled to respond to it he literally asked and answered his own question says well what's the motive here. And he said, Well, here's what the motive could be for someone to come in and lie not just out of the goodness of their heart, but there could be a financial back end motive for deferred advantage to do that. And after making these comments the judge went back and pointed out again that he'd made his decision based on the facts of this witness and that's what he always did. And he said, he said that that's that's only fair that's how you do it. And that he kind of encapsulated his entire thing that he felt that the whole scenario that the witness and described was incredible that the witness was incredible, based on his demeanor, among other things, his prior record and the story he told. And therefore his testimony would not possibly change the result upon a retrial because it was unbelievable and that was what the judge was charged with doing in an evidentiary hearing. And that is the role of judge has an evidentiary hearing and the difference that the judges determination is owed is significant and should be. I think it basically requires this, this never requires this court should affirm based on that, given that deference, because the job is to disregard the statements about, you know, coming that this was happening in other cases prisoners coming in to support one another. Um, well, I don't think they had to do with his ruling in this case, if that's what you mean. So, in that sense, which the court should disregard it, but it's, you know, it's an observation the judge I guess felt compelled by duty to point out that he's been seeing this a lot now. But this, this was something he wasn't, he wasn't bringing that observation to bear on this case that observation was based on what he had seen in this case, and that other cases there was not the cases that defendant sites pace, by the way, it's a weird case. I don't even know if it's actually valid because it was vacated. But now, withstanding that none of those cases are aligned with this case in terms of judicial bias or prejudice or whatever term you want to use in those cases. I don't like these kind of witnesses, and therefore, I'm going to disregard them. And it was usually one of them was at sentencing. I believe judge says, I don't like these kind of experts. They just give shade to bad people, or I don't like it when defendants come in and say that they're sorry for what they did to their kids. That's not what happened here at all. This judge talked for quite a while about this particular witness and then made a general remark about witnesses similar to this one that he had seen before, but he clearly and he emphasized this over and over. And by the way, I think he gets the benefit of the doubt as the trial as the judge conducting an evidentiary hearing that his observations and his decision was based on this witness and that was, I guess you could call it dicta. But it was an observation he wanted to make, and maybe he shouldn't have made it. And maybe the tone with which he was talking, the sarcasm or whatever, maybe that was enabled. Maybe that was improper too. There's no rule against sarcasm, obviously, but it does tend to get people in trouble because of the way it looks in written records. And so I think that we have to give that judge the deference that he is owed. And there's a lot of cases that talk about the particular and important role that a judge plays in a third state's post-conviction evidentiary hearing. They go back to the Coleman case from 98, which I think cites some case called Falkenberg or something. And there was a very, very wise decision that came from another district, I think I cited called Clark or something, that really talked about the importance of the role that the judge plays and the deference that is owed when the judge sits through one of these evidentiary hearings and weighs and considers that evidence and how important that is versus looking at the cold record where you've got a situation where we can slice and dice that and take things and move them around and recontextualize them as if we're editing almost a campaign ad or something. But given the deference that's owed and given the entirety of the comment, you can't privilege those remarks at the end over the entire thing where the judge explains why he found this witness incredible. It didn't start out and say, well, he's a prisoner and they're all incredible. I don't believe any of it. He went through the whole thing and then said why. I think that's what he's supposed to do. Maybe he shouldn't have made the remarks at the end. I think he felt duty bound. I don't know. I'm not in his head. I'm not a judge. I'm probably ill-advised given the argument we're having right now. But some of that may have been the circumstance of the whole thing, of sitting through the whole thing and being frankly exasperated by the witness. The witness's testimony was so, as I read it, that witness's testimony was so problematic that defendants counsel had to basically say after that because of the way he'd talked about the preparation of the affidavit, the defendants counsel had to fly in the person who helped prepare the affidavit because the witness had made it sound at one point as if the affidavit had been drafted and put in front of him so that he didn't even, he was just signing something counsel put in front of him. So, I mean, that was how problematic his testimony was. And that was why the judge pointed out, look, I'm not blaming counsel here and I'm not blaming counsel's staff. I'm blaming the defendant and the witness because I think they conspired to do something here. And so I don't know if the court has any questions for me. I actually wasn't expecting to get through all that. I have no questions, Justice Martin. No questions. Well, in that case, I would just ask that this court affirm the post conviction courts ruling denying defendant post conviction relief. Thank you. Thank you, Miss Lovie. Yes. I just want to remind the court that the lower courts rulings are in no way inviolate. And when counsel says that Walls testimony defies corroboration, he's dead wrong. There are objective factors in this record that the court can look at that shows that Walls was absolutely reliable. Walls tells us, or at least on the important things, whether or not there were details or confusions about nicknames or dates that needed to get corrected is not the question and should not deprive Mr. Logan of the justice he deserves. So I don't want us to lose the forest for the trees and the details of, you know, whether this date or this nickname was known that. The important things are that Walls told us that Mosby was 5'7 and 145 pounds as was the shooter. That is corroborated by Jenkins, who saw his brother-in-law or common law brother-in-law get shot in the head and who himself was shot with no motive to lie. That's corroborated by the 911 caller. It's corroborated by Elsie Robinson, who was an uninvolved bystander and corroborated by Albert Garrett. Walls also tells us that Mosby was a gang enforcer. That's corroborated by Mosby's criminal records. Walls tells us that Mosby was the passenger in this shooting. That's corroborated by Elsie Robinson, again, an uninvolved bystander who said that. It's also Walls' testimony is also corroborated by Latanya Payton, who talks about Dino being involved in her earlier statements. And so the important things make sense and are corroborated externally. The court lost the forest for the trees and started focusing on little details about, well, when did you know this? And, you know, who is the girlfriend, baby girl? Like, who are you with 25 years ago? You know, did you pick her up or did you know her beforehand? These kind of little details are unimportant to whether or not a jury could credit. Remember, an independent bank finder under Robinson could credit this really important testimony that says the shooter was a tiny little young guy. And Mr. Logan was six feet, 200 pounds, 28 years old. And this is new evidence that is that is certainly meaningful. The confusion that Mr. Walls showed on the stand makes sense when you remember that, first of all, this happened decades ago. Of course, he would remember the date if he prepped for trial. Somebody probably, you know, beforehand told him the date of this. But the other that he didn't remember other dates when he was standing up there is not a reason to unilaterally reject him or to say as reject him as a matter of law, which is essentially what the circuit court did here. And confusion about a nickname. Again, I cite several case law, several cases in the briefs talking about how that's how these guys knew each other. You know, it was common that they had one nickname and they had another nickname. And as to when Mr. Walls figured out the nickname, like that's not that. That's neither here nor there on the important question here, which is we have a man's life at stake here. This man has served a conviction for a murder that was committed by somebody who was five, six or five, seven when he stood at six feet. It was committed by someone who weighed around 145 pounds when he stood at 200 pounds. And we have a new witness who could tell us that we have a new 911 caller who can tell us contemporaneously that that's what the shooter looked like. And the jury never heard that. And even without hearing that, this jury was extremely troubled in an extremely close case. And so, you know, counsel tries to rely on the lower court. You know, we should always defer to the lower court. But I have demonstrated a number of manifest errors that this court can hook relief on to, including that the court ignored the independent corroboration. We've just discussed that the court relied on outside evidence about gangs and where they are and how long driving takes. That the court incorporated mistakes of fact. The court talks about there being fingerprints inside the vehicle. Mr. Logan's fingerprints were nowhere on the vehicle. They weren't, you know, according to Latanya, he was driving. They weren't on the steering wheel. They weren't on the rearview mirror. They weren't on the door. The court made a blatant, blatant mistake of fact. The court refused to consider all this corroborating evidence. So there are certainly numerous manifest errors that this court could hook relief to. And if ever there was a case crying out for it, it is this one we have now. I lose count. Four or five witnesses who say it was a short, small young man with low hair or no hair. And if you look at the picture of Mosby, it's in the record. That guy was was little and he had no hair. The last thing I guess I want to say is it just doesn't make sense that Mr. Logan would wait 20 years and then manipulate a witness to defend himself. I mean, if he was if it was all about gaming the system, don't you think he would have done that at year two or year three? I mean, he waited. This witness would arrive at the end of Mr. Logan's sentence. He served the sentence for a murder he didn't commit. And all he wants is for a jury to hear this new witness who will say and this new 911 call tape that the jury never heard. That will say this was a very short, very smelt, dark skinned, low hair man who committed the crime. And Mr. Logan was six feet tall. He weighed over 200 pounds. If you look at his booking photo, he had a full head of hair and the complexion, the physique. None of that matches him. He's entitled to a new trial. And the court committed numerous manifest errors in rejecting. Any questions, Justice Martin? No questions. Thank you. Thank you, Miss Logan. Thank you very much. So I'd like to thank counsel, Ms. And we will take this case under advisement. Thank you.